IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALICIA BELFREY-FARLEY,

     Plaintiff,

v.                            No. 3:19-cv-1305-S-BT

MARGO R. PALMER,

     Defendant.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Margo R. Palmer's motion to dismiss (ECF No. 24), asking the Court to dismiss Plaintiff's Amended Complaint for failure to state a claim and on the basis of qualified immunity. For the reasons stated, the District Court should GRANT Defendant's Motion and DISMISS Plaintiff's claims against Defendant with prejudice.

## Background

At 7:30 a.m. on February 8, 2018, Plaintiff Alicia Belfrey-Farley woke up to loud voices in her Grand Prairie, Texas home and exited her bedroom where she encountered five unknown federal agents with AR-15 semiautomatic weapons. Am. Compl. 2 (ECF No. 23). Defendant Margo R. Palmer and the four other United States Department of Justice, Office of Inspector General (DOJ/OIG) agents had an arrest warrant for Plaintiff, who had been indicted for making false statements relating to health-care matters in violation of 18 U.S.C. § 1035(a). *Id.*; Mot. 8-9.

One agent handcuffed Plaintiff's wrists, escorted her out of the house, and placed her in an unmarked law-enforcement vehicle. Am. Compl. 2. Agent Palmer then removed Plaintiff from the vehicle and put leg irons on her. *Id.* According to Plaintiff, after she was outside and handcuffed, Palmer and the other agents searched her home without her consent. *Id.* 2, 8-9. Plaintiff alleges Palmer, who is white, did so "at least in part" because of Plaintiff's race, ethnicity, or perceived national origin. *Id.* 18. Once Plaintiff was back in the vehicle, another agent, Brian, drove Plaintiff from her home to the federal courthouse in Dallas; Palmer sat in the back seat with Plaintiff. *Id.* 9; Mot. 9.; Def.'s App. 75 (ECF No. 25-1).

Plaintiff contends that on the way to the courthouse she asked Palmer to "double lock" her leg irons and put a seat belt on her, which Palmer refused. Am. Compl. 2-3, 9-10. Because they weren't double locked, the leg irons allegedly tightened on both of her legs and ankles and cut off her circulation, injuring her. *Id.* 2-3. And without a seat belt, she bounced off the seat in the vehicle and fell into Palmer, who pushed her away. *Id.* 10. Palmer recorded her conversation with Plaintiff during the ride to the courthouse. *Id.*

Once in the courthouse holding cell, Plaintiff allegedly asked Palmer to remove her leg irons or loosen them, but Palmer again refused. *Id.* 11. After that, Plaintiff purportedly told Palmer that she needed immediate medical assistance because she lost feeling in her feet due to the leg irons; Palmer dismissed this concern and required her to stand during the fingerprinting process. *Id.* Plaintiff then passed out because of the pain she experienced, and a U.S. Marshal placed

her in a wheelchair. *Id.* Palmer then wheeled Plaintiff into the courtroom to appear before the magistrate judge, who ordered Plaintiff's release pending further proceedings. *Id.* 12. Plaintiff left the courthouse and went directly to a hospital emergency room "because of the severe swelling on her legs and ankles caused by the leg irons." *Id.* One year later, Plaintiff sought follow-up care and spent several weeks in the hospital. *Id.* 12. She also spent time at a rehabilitation center. *Id.* 13. "The attending physicians concluded that the leg irons were too tight and caused loss of circulation of bloods [sic], cut the Plaintiff's skin of [sic] the back of Plaintiff's ankle, allowing bacteria and other pathogens to enter Plaintiff's blood stream causing severe infection, cellulitis, rhabdomyolysis and drop foot to left foot." *Id.* Based on these facts, Plaintiff filed her lawsuit against Palmer bringing claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging Palmer violated her Fourth and Fifth Amendment rights. Am. Compl. 14-19.

In response, Palmer filed her motion to dismiss, requesting the Court dismiss Plaintiff's lawsuit for failure to state a claim, because her claims require extending *Bivens* to a new context, and on the basis of qualified immunity. Mot. Palmer disputes Plaintiff's version of events, arguing—among other things—that Plaintiff never complained about the leg irons. *See id.* 10-11. Palmer attached a recording and the transcript of her conversation with Plaintiff on the way to the courthouse, which she argues contradicts Plaintiff's assertions. *See* Def.'s App. Because the Court intended to consider Palmer's evidence attached to her motion

to dismiss, it converted her motion to one for summary judgment and allowed Plaintiff to conduct limited discovery narrowly tailored to uncover only those facts needed to rule on Palmer's qualified-immunity claim. *See* Order (ECF No. 26); Order (ECF No. 38). Plaintiff filed her response to Palmer's motion. Pl.'s Resp. (ECF No. 39), and Palmer filed her reply. Def.'s Reply (ECF No. 40). Thus, Palmer's motion is fully briefed and ripe for determination.

## Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citing *Celotex Corp.*, 477 U.S. at 323-24). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise

manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (quoting *Ragas*, 136 F.3d at 458) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

Although Plaintiff states in her Amended Complaint that Palmer's "acts . . . constituted excessive force, a clear violation of Plaintiff's Fourth and Eighth Amendment rights," Am. Compl. 3, she brings claims under *Bivens* for violation of only her Fourth and Fifth Amendment rights. *Id.* 2, 14-19. Moreover, even if she had brought an Eighth Amendment claim, federal pretrial detainees' rights flow from the Fifth Amendment due-process clause and not the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) ("Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety."); *Morgan v. Patterson*, 2017 WL 7732439, at *6 n.4 (S.D. Tex. Aug. 8, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 530-32 (1979); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th

Cir. 2000); *Anderson v. Capps*, 2004 WL 1418795, at *2 n.3 (N.D. Tex. Jun. 22, 2004)) ("Deliberate indifference claims made by federal pretrial detainees, such as Plaintiff, are cognizable under the Fifth Amendment's Due Process Clause."), *adopted by* 2018 WL 942458 (S.D. Tex. Feb. 15, 2018), *aff'd*, 772 F. App'x 117 (5th Cir. 2019). Accordingly, the Court addresses Plaintiff's Fourth Amendment excessive-force, Fourth Amendment unreasonable-search, and Fifth Amendment equal-protection claims, and does not consider Plaintiff to assert a claim under the Eighth Amendment.[1]

### Bivens

In *Bivens*, the United States Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa* (*Hernandez 2020*), 140 S. Ct. 735, 741 (2020) (Alito, J.) (citing *Bivens*, 403 U.S. at 388). Unlike the multitude of claims that may be brought against state officials under 42 U.S.C. § 1983, "a *Bivens* remedy is not available for all constitutional violations." *Butts v. Martin,* 877 F.3d 571, 587 (5th Cir. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009) ("In the limited settings where *Bivens* does

---

[1] In her response, Plaintiff asserts that she "was arrested in her home and handcuffed, she was also not provided with medical attention while in federal custody, and her home was searched without consent and without her permission. These acts clearly fall within the Bivens criteria." Pl.'s Resp. 5. However, Plaintiff does not assert an Eighth or Fifth Amendment deliberate-indifference cause of action.

apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'" (citations and internal quotation marks omitted)).

In the decade after *Bivens*, the Supreme Court decided two cases in which it recognized an implied cause of action outside of the Fourth Amendment context. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court extended Bivens to cover "a former congressional staffer's Fifth Amendment claim of dismissal based on sex," and in *Carlson v. Green*, 446 U.S. 14 (1980), "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." *Hernandez 2020*, 140 S. Ct. at 741. But "[a]fter those decisions, . . . the [Supreme] Court changed course." *Id*. "In later years, [it] came to appreciate more fully the tension between this practice [of implying a damages remedy under the Constitution itself] and the Constitution's separation of legislative and judicial power." *Id*. Accordingly, "to put it mildly, extending *Bivens* to new contexts is a 'disfavored judicial activity.'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)). The Supreme Court has even "gone so far as to observe that if the Court's three *Bivens* cases had been decided today, it is doubtful that [it] would have reached the same result." *Hernandez 2020*, 140 S. Ct. at 742-43 (cleaned up) (citing *Abbasi*, 137 S. Ct. at 1856).

Even though expanding *Bivens* is a disfavored judicial activity, "[t]he Supreme Court has provided a two-part test to determine when extension would be appropriate." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (per curiam).

7

"First, courts should consider whether the case before it presents a 'new context.'" *Id.* (citing *Hernandez 2020*, 140 S. Ct. at 743). And "[o]nly where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" *Id.* (quoting *Hernandez 2020*, 140 S. Ct. at 743). The Supreme Court has not defined "special factors counselling hesitation," *Abbasi*, 137 S. Ct. at 1857-58, but "[s]ome recognized special factors to consider include: whether there is a 'risk of interfering with the authority of the other branches,' whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Byrd*, 990 F.3d at 881 (quoting *Hernandez 2020*, 140 S. Ct. at 743). Implying new causes of action under the Constitution implicates separation-of-powers concerns such that "[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks omitted) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 426-27 (1988)).

In her motion, Palmer argues: (1) she is entitled to qualified immunity; (2) Plaintiff fails to state a claim under the Fourth and Fifth Amendments; and (3) Plaintiff's Fourth and Fifth Amendment claims present new contexts that would extend *Bivens*. Mot. 18, 22, 27, 29, 30. While ordinarily, "[q]ualified immunity

questions should be resolved 'at the earliest possible stage in litigation,'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)), "[t]he Supreme Court has stated that 'the *Bivens* question' is 'antecedent' to the question of qualified immunity." *Byrd*, 990 F.3d at 881 (citing *Hernandez v. Mesa* (*Hernandez 2017*), 137 S. Ct. 2003, 2006 (2017)). Accordingly, the Court first determines whether Plaintiff's *Bivens* claims present new contexts, and, if so, whether any special factors counselling hesitation indicate extending *Bivens* to those contexts would be inappropriate before considering Palmer's qualified-immunity and other arguments.

## I. New Context Under *Bivens*

### a. Fourth Amendment – Excessive Force

Plaintiff first brings a Fourth Amendment excessive-force claim, asserting Palmer's "intentional refusal or failure to double lock the handcuffs and leg irons caused serious bodily injury to Plaintiff's leg and ankles." Am. Compl. 14-15. Palmer argues that although Plaintiff brings her excessive-force claim under the same amendment at issue in *Bivens*—the Fourth Amendment—her excessive-force claim still presents a new context because Palmer "legally effectuated a lawful arrest pursuant to an indictment" and Plaintiff only "complains about the manner in which the cuffs were locked." Mot. 24-25. The Court concludes Plaintiff's Fourth Amendment excessive-force claim presents a new context under *Bivens*.

Today, *Bivens* claims generally are limited to the specific circumstances presented in *Bivens*, *Davis*, and *Carlson*: "(1) manacling the plaintiff in front of his

family in his home and strip-searching him in violation of the Fourth Amendment; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Oliva*, 973 F.3d at 442 (citing *Bivens*, 403 U.S. at 389-90; *Davis*, 442 U.S. at 228; *Carlson*, 446 U.S. at 14). "Virtually everything else is a 'new context.'" *Id.* (citing *Abbasi*, 137 S. Ct. at 1865 (explaining that "the new-context inquiry is easily satisfied")). The Supreme Court's "understanding of a 'new context' is broad"—"'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" *Id.* (citing *Hernandez 2020*, 140 S. Ct. at 743; *Abbasi*, 137 S. Ct. at 1864).

While Plaintiff's excessive-force claim and *Bivens* both involve the Fourth Amendment, "[c]ourts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Id.* (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)). "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way*.'" *Id.* (quoting *Cantú*, 933 F.3d at 422); *see also Hernandez 2020*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Nonetheless, were a different constitutional right at issue, that would be a meaningful difference. Palmer also argues in her motion that "it is far from clear that those of Plaintiff's allegations not specifically refuted by the indisputable

evidence fall within the Fourth Amendment. Rather, based on the timing of those matters in respect to the arrest, they may more appropriately fall under the Fifth Amendment." Mot. 26; Def.'s Reply. 7 (suggesting that Plaintiff's Fourth Amendment excessive-force claim may "instead arise under the due process clause of the Fifth Amendment"). However, if that were the case, this would further differentiate Plaintiff's claim from the *Bivens* context, or even the *Davis* context, which concerns Fifth Amendment equal protection, as explained below.

The Supreme Court has provided a nonexhaustive list of example "meaningful differences," which include differences in "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1859-60. Because Plaintiff asserts an excessive-force claim under the Fourth Amendment, the Court considers whether it arises in the *Bivens* context and not the *Davis* and *Carlson* contexts, which concern different amendments.

In *Bivens*, Federal Bureau of Narcotics agents arrested Webster Bivens without a warrant on the morning of November 26, 1965, for alleged narcotics violations. *Bivens*, 403 U.S. at 389. The agents entered his apartment, manacled him in front of his wife and children, threatened to arrest the entire family, and

searched the apartment "from stem to stern." *Id.* Afterward, they took Bivens to the federal courthouse in Brooklyn, where they interrogated, booked, and strip-searched him. *Id.*

In Plaintiff's case, the circumstances are meaningfully different from *Bivens*. While Palmer arrested Plaintiff at her home in the morning and put leg irons on her (though Plaintiff was outside, it is unclear whether her husband observed this), Palmer did so pursuant to a warrant, and Plaintiff does not contend Palmer threatened to arrest her husband or interrogated and strip-searched her at the courthouse. *See* Am. Compl. 14-15, 17; Pl.'s Resp. 2 ("However they did have an arrest warrant for the Plaintiff."). In fact, Plaintiff's Fourth Amendment excessive-force claim does not challenge the legality of her arrest, only the manner in which Palmer used the leg irons to restrain her. Accordingly, Plaintiff's excessive-force claim presents a new context. *See Cantú*, 933 F.3d at 423 (citing *Hernandez v. Mesa* (*Hernandez 2018*), 885 F.3d 811, 816-17 (5th Cir. 2018) (en banc) , *aff'd*, 140 S. Ct. 735 (2020); *Tun-Cos v. Perrotte*, 922 F.3d 514, 517-18 (4th Cir. 2019)) ("In the wake of *Abbasi*, our Court and at least one of our sister circuits have rejected new Fourth Amendment claims under *Bivens*.")

b. Fourth Amendment – Unreasonable Search

Plaintiff brings a second claim under the Fourth Amendment, styled "Unreasonable Search and Seizure." Am. Compl. 16. However, Plaintiff only contends "Defendants had no lawful reason to extend the arrest warrant of Plaintiff to enter her home without consent and without a [search] warrant." *Id.* 17. She

12

does not describe any improper seizure of property and admits Palmer had a warrant to seize her person. *See id*. Thus, Plaintiff's second Fourth Amendment claim is really an unreasonable-search claim. Palmer also argues that Plaintiff's unreasonable-search claim presents a new context under *Bivens*. Mot. 27-28. The Court agrees.

As explained above, in *Bivens*, Federal Bureau of Narcotics agents arrested Bivens at his apartment without a warrant, "manacled" him in front of his family, threatened to arrest them also, and searched the apartment, presumably for illegal substances in relation to his alleged narcotics violations. 403 U.S. at 389. Once at the federal courthouse, Bivens was booked, interrogated, and strip-searched. *Id*. Here, Palmer and other DOJ/OIG agents executed a warrant to arrest Plaintiff. Am. Compl. 17; Pl.'s Resp. 2. The agents then searched Plaintiff's residence subsequent to her arrest. Am. Compl. 9; Mot. 28 n.17 (asserting "[t]he agents were permitted to conduct a cursory search of the home to ensure that there were no other individuals present who might pose a danger to the agents"); Pl.'s Resp. 5. ("Defendant does not deny searching the Plaintiff's home <u>after</u> she was in custody and confined to a government vehicle."). Irrespective of the search's legality, which the Court does not now evaluate, searching an arrestee's residence incident to executing a lawful (or at least unchallenged) warrant for his or her arrest presents meaningfully different circumstances than those in *Bivens*, where the agents acted without an arrest or search warrant. Additionally, Palmer and the other DOJ/OIG agents operate under a different mandate than the federal narcotics agents in

*Bivens*. *See Abbasi*, 137 S. Ct. at 1859-60 (including "the statutory or other legal mandate under which the officer was operating" in its nonexhaustive list of example meaningful differences); *Cantú*, 933 F.3d at 423 (noting one reason plaintiff's Fourth Amendment claim meaningfully differs from *Bivens* is because it "involves different conduct by different officers from a different agency"). Accordingly, Plaintiff's Fourth Amendment unreasonable-search claim presents a new context under *Bivens*. *See Cantú*, 933 F.3d at 423 (rejecting new Fourth Amendment claims under *Bivens*).

### c. Fifth Amendment – Equal Protection

Last, Plaintiff brings a Fifth Amendment equal-protection claim, alleging Palmer "targeted and searched Plaintiff's home . . . because of Plaintiff's race, ethnicity, and/or perceived national origin in violation of clearly established rights under the equal protection component of the Due Process Clause of the Fifth Amendment." Am. Compl. 18. Palmer contends Plaintiff's Fifth Amendment claim presents a new context under *Bivens*. Mot. 29. The Court again agrees.

In *Davis*, the Supreme Court held that "a cause of action and a damages remedy [could] also be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated." 442 U.S. at 230, 248-49. In that case, United States Congressman Otto Passman fired his deputy administrative assistant, Shirley Davis, because "although she was 'able, energetic and a very hard worker,' . . . 'it was essential that the understudy to [his] Administrative Assistant be a man.'" *Id*. at 230. Davis sued Passman, alleging that

he discriminated against her on the basis of sex in violation of the Fifth Amendment. *Id.* at 231.

Here, Plaintiff alleges Palmer, "who is white invaded the Plaintiff's home at least in part due to Plaintiff's race, ethnicity and/or perceived national origin." Am. Compl. 18. In other words, Plaintiff alleges racial animus motivated the federal agents' decision to search her home and the manner in which they conducted the search. She does not allege she suffered sex-based employment discrimination by a congressman as in *Davis*. In fact, the only similarity between Plaintiff's Fifth Amendment claim and Davis's claim is that they both arise under the Fifth Amendment. *See Hernandez 2020*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Accordingly, Plaintiff's Fifth Amendment equal-protection claim presents a new context under *Bivens*. *See Cantú*, 933 F.3d at 422 ("No one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause— means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action. The Supreme Court rejected a claim under the same clause of the same amendment nine years later." (citing *Schweiker*, 487 U.S. at 420 (denying a *Bivens* action under the Fifth Amendment's Due Process Clause for wrongful denial of Social Security disability benefits)).

## II. Special Factors Counselling Hesitation

Palmer contends that special factors counsel hesitation in extending *Bivens* to the new contexts Plaintiff presents in her Fourth Amendment excessive-force, Fourth Amendment unreasonable-search, and Fifth Amendment equal-protection claims. Mot. 24-29. Plaintiff acknowledges that Palmer "asserts that two special factors exist in this case which counsel against expanding Bivens i.e. alternate remedial structure and separation of powers" and only cursorily responds that she is "not attempting to expand Bivens" and that "all her claims fall well within the confines of Bivens." Pl.'s Resp. 4. The Court finds special factors counsel hesitation in extending *Bivens* to the new contexts Plaintiff's claims present and declines to engage in that "disfavored judicial activity."

The Supreme Court has dictated that when a court finds that a *Bivens* claim arises in a new context, it must proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension. *Hernandez 2020*, 140 S. Ct. at 743 (citing *Abbasi*, 137 S.Ct. at 1857). "If there are— that is, if [the court] ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants—[the court] reject[s] the request." *Id.*; s*ee also Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020) ("[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" (citations omitted)). "[T]he only relevant threshold—that a factor 'counsels hesitation'—is remarkably low." *Hernandez 2018*, 885 F.3d at 822 (quoting *De La Paz v. Coy*, 786 F.3d 367, 378

(5th Cir. 2015)). The court's chief considerations must be "whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, and whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez 2020*, 140 S. Ct. at 743 (internal quotation marks omitted) (quoting *Abbasi*, 137 S.Ct. at 1858); *see also Canada*, 950 F.3d at 309 (citing *Hernandez 2018*, 885 F.3d at 818) ("The court's focus is on maintaining the separation of powers: 'separation-of-powers principles are or should be center to the analysis.'")).

Specifically, Palmer argues "Plaintiff's *Bivens* claims rely on the same facts as alleged in her state tort claims for assault and battery" and that because she "has an alternative remedy for her claims under the Federal Tort Claims Act," the Court should not extend *Bivens* to these new contexts. Mot. 25-26. But Plaintiff does not bring any tort claims in her Amended Complaint—she brings only three claims under the Fourth and Fifth Amendments. *See* Am. Compl. And while 28 U.S.C. § 2680(h), the "law-enforcement proviso," waives the United States' sovereign immunity for certain torts committed by federal law-enforcement officers, *see Jeanmarie v. United States*, 242 F.3d 600, 604 (5th Cir. 2001) (noting "that intentional tort claims arising out of arrests are not barred by § 2680(c), and are in fact permitted by § 2680(h)"), it does not permit suits against individual defendants, *see Boyer v. Santana*, 2018 WL 1525174, at *3 (N.D. Tex. Mar. 14, 2018) (Rutherford, J.) (citing 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety*

& Health Admin., 860 F.2d 181, 183 (5th Cir. 1988)) ("The FTCA does not authorize claims against an agency or a government employee in his or her individual capacity."), *adopted by* 2018 WL 1517871 (N.D. Tex. Mar. 28, 2018), and the Fifth Circuit "ha[s] squarely recognized that '[c]onstitutional torts . . . do not provide a proper predicate for an FTCA claim.'" *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 664 (5th Cir. 2019) (citing *Spotts v. United States*, 613 F.3d 559, 565 n.3 (5th Cir. 2010); *Coleman v. United States*, 912 F.3d 824, 835 (5th Cir. 2019) (the "source of substantive liability under the FTCA" must be the "law of the State" and not federal law); *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989) (explaining "the FTCA does not provide a cause of action for constitutional torts" because "by definition constitutional torts are not based on state law")); *see also McAfee v. 5th Cir. Judges*, 884 F.2d 221, 223 (5th Cir. 1989) (per curiam) ("A constitutional claim does not arise under the [Federal Tort Claims] Act and is barred by sovereign immunity." (citing *Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir. 1983))). Thus, Plaintiff would not have been able to bring the same claims against the same defendant under the FTCA. *See Byrd*, 990 F.3d at 884 n.8 (Willett, J., concurring) ("The Federal Tort Claims Act does waive the United States' sovereign immunity for certain intentional torts—but not for excessive-force claims against individual federal officers. . . . Beyond providing no federal-officer corollary to § 1983, Congress has pre-empted the state tort suits that traditionally served as the mechanism by which damages were recovered from federal officers. . . . [F]or many victims of unconstitutional

conduct at the hands of federal officers, it's *Bivens* or nothing." (internal citations and quotation marks omitted)).

Nonetheless, "[t]he Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) (Breyer, J.)). And "Congress's decision not to provide a judicial remedy does not compel [the court] to step into its shoes." *Hernandez 2020*, 140 S. Ct. at 750. "[T]he length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this context," despite "the existence of a statutory scheme for torts committed by federal officers," is instructive. *Cantú*, 933 F.3d at 423 (citing 28 U.S.C. § 2680(h); *Abbasi*, 137 S. Ct. at 1858). "Because Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its 'failure to provide a damages remedy' here suggests 'more than mere oversight.'" *Id.* (citing *Abbasi*, 137 S. Ct. at 1857, 1862; *De La Paz*, 786 F.3d at 377); *accord Oliva*, 973 F.3d at 443-44 ("Likewise, we have emphasized that 'the existence of a statutory scheme for torts committed by federal officers' weighs against inferring a new cause of action."). The Court finds that by extending *Bivens* to the new contexts Plaintiff's claims present, it would risk interfering with the authority of the legislative branch, which is in the best position to "consider and weigh the costs and benefits of allowing a damages action to proceed," *Byrd*, 990 F.3d at 881 (citation omitted), and to determine "if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (citation and

quotation marks omitted). "This special factor gives [this Court] 'reason to pause' before extending *Bivens*." *Byrd*, 990 F.3d at 882 (citing *Hernandez 2020*, 140 S. Ct. at 743).

Because Plaintiff's Fourth Amendment excessive-force, Fourth Amendment unreasonable-search, and Fifth Amendment equal-protection claims present new contexts under Bivens, and special factors counsel hesitation in extending *Bivens* to those contexts, the District Court should DISIMISS Plaintiff's claims with prejudice. Therefore, the Court pretermits consideration of Palmer's qualified-immunity and remaining dismissal arguments.

## Recommendation

For the reasons stated, the District Court should GRANT Defendant Margo R. Palmer's motion to dismiss (ECF No. 24) and DISMISS Plaintiff Alicia Belfrey-Farley's claims against her with prejudice.

**SO RECOMMENDED.**

May 7, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

21